JUDGE PAULEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL FREEDMAN, Individually and on Behalf of All Other Persons Similarly Situated, | ) Civil Action No.: |
| Plaintiff, | ) **14 CV 9357** |
| | ) **JURY TRIAL DEMANDED** |
| v. | ) |
| MOL GLOBAL, INC., GANESH KUMAR BANGAH, ALLAN SAI WAH WONG, CRAIG WHITE, YIT FEI CHANG, TEK KUANG CHEAH, MUN KEE CHANG, ERIC HE, NOAH J. DOYLE, CITIGROUP GLOBAL MARKETS INC., DEUTSCHE BANK SECURITIES INC., UBS SECURITIES LLC, and CIMB SECURITIES (SINGAPORE) PTE LTD., | ) |
| Defendants. | ) |

RECEIVED
NOV 24 2014
U.S.D.C. S.D. N.Y.
CASHIERS

## CLASS ACTION COMPLAINT

Plaintiff Michael Freedman ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, review and analysis of (a) regulatory filings made by MOL Global, Inc. ("MOLG" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) media reports about MOLG and its management; and (c) a review of other publicly available information concerning MOLG and its management. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired MOLG American Depositary Shares ("ADSs") between October 9, 2014 and November 20, 2014, both dates inclusive (the "Class Period"), and/or who acquired MOLG ADSs pursuant and/or traceable to MOLG's false and misleading Registration Statement and Prospectus issued in connection with the Company's October 9, 2014 initial public offering ("IPO"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under §§ 11 and 15 of the Securities Act of 1933 ("1933 Act"), and under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      MOL Global, Inc., through its subsidiary, MOL AccessPortal Sdn. Bhd., provides e-payment solutions for online goods and services in Southeast Asia. The Company operates a payments platform, which connects consumers with digital content providers, telecommunications service providers, and online merchants through a network of distribution channels that accept cash and online payment methods.

3.      On October 3, 2014, MOLG filed its amended Registration Statement for the IPO, which became effective on October 8, 2014. Pursuant to the IPO, 13,500,000 ADSs were sold, consisting of 7,485,030 ADSs offered by the Company and 6,014,970 ADSs offered by certain selling shareholders of the Company, at the price to the public of $12.50 per ADS. Each ADS represents one ordinary share of the Company. The ADSs began trading on the NASDAQ Global Market ("NASDAQ") on October 9, 2014 under the symbol "MOLG."

2

4.    As set forth in the Registration Statement, MOLG purports to be the largest e-payment enabler for online goods and services by payment volume in Southeast Asia. The Company operates a payments platform that purportedly facilitates online and mobile commerce for consumers in emerging and other markets by providing a vast network of payment channels that accept payment using cash and online methods. MOLG's physical distribution network comprises more than 970,000 physical locations in 13 countries across four continents where it maintains a local presence as of June 30, 2014 and physical locations in other countries where the Company has relationships with aggregators that distribute products through channels with which the Company has relationships.

5.    MOLG's primary product is MOLPoints micropayment system, which sells payment credits that can be used by consumers to purchase online game credits and other digital content, including Facebook Game Cards. The Company also operates MOLReloads, a distribution network that distributes prepaid mobile airtime and digital content; MOLPay, a payments solution for online merchants; and MMOG.asia, an online games portal.

6.    Prior to the IPO, and as reported in the Registration Statement, MOLG's financial results consistently improved year over year, and quarter over quarter, demonstrating strong business trends and future growth prospects. For example, MOLG reported a revenue increase of 33.4% to MYR105.1 million for the six months ended June 30, 2014 from MYR78.7 million for the same period in 2013 primarily due to increased revenue from all segments except MMOG.asia. As a result of the foregoing, profit before tax increased 65.8% to MYR15.9 million for the six months ended June 30, 2014 from MYR9.6 million for the same period in 2013. Moreover, revenue increased 79.5% to MYR171.5 million for 2013 from MYR95.6 million for 2012 primarily due to increased segment revenue from MOLPoints and MMOG.asia.

As a result of the foregoing, profit from operations reportedly increased 96.6% to MYR25.4 million for 2013 from MYR12.9 million for 2012.

7.      Additionally, on November 20, 2014, prior to the opening of the market, Deutsche Bank, which had previously assisted in the Company's IPO, assumed coverage on MOL in a research note setting a "buy" recommendation and a $12.00 price target on the stock. Deutsche Bank's price objective points to a potential upside of 49.44% from the ADSs' previous close.

8.      However, as described further below, unbeknownst to MOLG investors at the time of the IPO, MOLG had grossly overstated its financial results in the Registration Statement. Specifically, Defendants made false and/or misleading statements and/or failed to disclose to MOLG investors that: (1) MOLG was overstating the revenue and profit derived from MOLG's business and operations; (2) MOLG's actual business model could not sustain the growth trends described in the Offering Documents (defined below); (3) MOLG would not be able to report its third quarter 2014 financial results on November 21, 2014, as previously stated; and (4) as a result of the foregoing, MOLG's financial statements were materially false and misleading at all relevant times.

9.      On November 20, 2014, after the market closed, little more than forty days after the Company's IPO, MOLG announced "that the Company has rescheduled the date it plans to release its third quarter 2014 financial results to Wednesday, December 3, 2014 before market opens." The Company had previously announced that it would issue the results on November 21, 2014. Shockingly, the Company also announced that the CFO had abruptly resigned "for personal reasons."

10. Thereafter, on November 21, 2014, just a day after issuing a "buy" recommendation, Deutsche Bank advised investor caution about shares in MOLG, describing MOL's sudden announcement as "potentially ominous."

11. On this news, shares of MOLG declined $4.77 per share, or almost 54%, to close at $4.09 per share on November 21, 2014, on unusually heavy volume. This represented a 67% decline in MOLG's ADS price from the IPO price of $12.50.

12. On November 24, 2014, NASDAQ announced that trading was halted in MOLG at 09:10:08 Eastern Time for "additional information requested" from the Company at a final price of $4.09 per ADS. According to the NASDAQ, trading in the Company's stock will remain halted until the Company has fully satisfied the exchange's request.

13. As a result of Defendants' false and/or misleading statements, MOLG ADSs traded at inflated prices during the Class Period. However, after disclosure of Defendants' false and/or misleading statements, MOLG's ADSs suffered a precipitous decline in the market value, thereby causing significant losses and damages to Plaintiff and other Class members.

## JURISDICTION AND VENUE

14. The claims asserted herein arise under and pursuant to §§11 and 15 of the 1933 Act [15 U.S.C. §§77k and 77o], and §§10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

15. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, §22 of the 1933 Act, and §27 of the Exchange Act.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because defendants maintain an office in this District, and many of the acts and omissions complained of herein occurred in substantial part in this District.

17. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of a national securities exchange.

## PARTIES

18. Plaintiff, as set forth in the attached certification, purchased MOLG shares at artificially inflated prices during the Class Period and has been damaged upon the revelation of the alleged corrective disclosures.

19. Defendant MOLG is a Cayman Islands limited liability company founded in 2000. Its principal executive offices are located at Lots 07-03 & 08-03, Levels 7 & 8, Berjaya Times Square, No. 1, Jalan Imbi, 55100 Kuala Lumpur, Malaysia. MOLG's ADSs trade on the NASDAQ under the ticker symbol "MOLG."

20. Defendant Ganesh Kumar Bangah ("Bangah") has served as a Director and Chief Executive Officer of MOLG at all relevant times. Bangah signed and/or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC.

21. Defendant Allan Sai Wah Wong ("Wong") has served as the Chief Financial Officer of MOLG at all relevant times. Wong signed and/or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC. Wong abruptly resigned from his position at the Company on November 20, 2014.

22. Defendant Craig White ("White") has served as a Director and President of MOLG at all relevant times. White signed and/or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC.

23.     The defendants named in ¶¶ 20-22 above are sometimes referred to herein as the "Officer Defendants."

24.     Defendant Yit Fei Chang ("Chang") has served as a Director of MOLG at all relevant times.   Chang signed and/or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC.

25.     Defendant Tek Kuang Cheah ("Cheah") has served as a Director of MOLG at all relevant times.   Cheah signed and/or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC.

26.     Defendant Mun Kee Chang ("K. Chang") has served as a Director of MOLG at all relevant times.   K. Chang signed and/or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC.

27.     Defendant Eric He ("He") has served as a Director of MOLG at all relevant times. He signed and/or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC.

28.     Defendant Noah J. Doyle ("Doyle") has served as a Director of MOLG at all relevant times.   Doyle signed and/or authorized the signing of the Company's false and misleading Registration Statement filed with the SEC.

29.     The defendants named in ¶¶ 24-28 above are sometimes referred to herein as the "Director Defendants"  and are named as defendants solely for violations of the 1933 Act.

30.     Defendant Citigroup Global Markets Inc. ("Citigroup") served as an underwriter, global coordinator, and joint booking-running manager of the Company's IPO, helping to draft and disseminate the offering documents.

31.    Defendant Deutsche Bank Securities Inc. ("Deutsche") served as an underwriter, global coordinator, and joint booking-running manager of the Company's IPO, helping to draft and disseminate the offering documents.

32.    Defendant UBS Securities LLC ("UBS") served as an underwriter, global coordinator, and joint booking-running manager of the Company's IPO, helping to draft and disseminate the offering documents.

33.    Defendant CIMB Securities (Singapore) Pte Ltd ("CIMB") served as an underwriter, global coordinator, and joint booking-running manager of the Company's IPO, helping to draft and disseminate the offering documents

34.    The defendants named in ¶¶ 30-33 above are sometimes referred to herein as the "Underwriter Defendants."

35.    Defendant MOLG and the Officer and Director Defendants who signed and/or authorized the signing of the Registration Statement are strictly liable for the false and misleading statements incorporated into the Registration Statement. The Underwriter Defendants drafted and disseminated the offering documents and were paid substantial fees in connection therewith. The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

## SUBSTANTIVE ALLEGATIONS

### Background

36.    MOLG purports to the largest e-payment enabler for online goods and services in Southeast Asia by payment volume. The Company operates a payments platform that facilitates online and mobile commerce for consumers in emerging and other markets by providing a network of payment channels that accept payment using cash and online methods. MOLG's

physical distribution network purports to comprise more than 970,000 physical locations in 13 countries across four continents. The Company also purports to have mobile and electronic distribution channels that accept major credit cards and online banking from more than 100 banks globally as of June 30, 2014.

37.     MOLG's primary product is MOLPoints micropayment system, which sells payment credits that can be used by consumers to purchase online game credits and other digital content, including Facebook Game Cards. The Company also operates MOLReloads, a distribution network that distributes prepaid mobile airtime and digital content; MOLPay, a payments solution for online merchants; and MMOG.asia, an online games portal. The Company also plans to launch MOLWallet, an online and mobile payment processing and money transfer system in Malaysia in 2014.

38.     According to the Company, its products provide various opportunities to acquire and retain customers and their payment credentials, which present cross-selling opportunities for the Company's existing and future solutions. MOLG's user base consists of both registered and unregistered users.

39.     As part of the Company's rapidly expanding growth strategy, MOLG has engaged in acquisitions and other inorganic growth opportunities, especially as the Company expands into new markets. For example, in 2013 MOLG acquired 70% of each of Game Sultan, which operates a micropayment system for the Turkish market, and PaytoGo, which operates a payment service provider for the Turkish market, and AyoPay, an Indonesian payment service provider that specializes in online distribution of game credits. MOLG acquired the remaining 30% equity interest in each of Game Sultan and PaytoGo in 2014. The Company also acquired 50% of NganLuong, which now serves as MOLG's primary distribution network in Vietnam. In

September 2014, MOLG acquired 51% of PayByMe, a mobile carrier billing platform that currently operates in Turkey and the Middle East.

40.     According to the Registration Statement, MOLG expects to continue to evaluate potential strategic acquisitions of businesses or products with the intention to expand user and revenue base, widen geographic coverage and increase product range.

## Defendants' Materially False and Misleading Statements
## Made In Connection with the IPO and Issued During the Class Period

41.     On or about October 3, 2014, MOLG filed with the SEC its Registration Statement on Form F-1/A, which became effective on October 8, 2014, and would later be utilized in the IPO.   The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

42.     On October 9, 2014, the first day of the Class Period, MOLG filed its Prospectus for the IPO, which forms part of the Registration Statement that became effective on October 8, 2014. The Registration Statement and Prospectus (collectively, the "Offering Documents") indicated that MOLG has:

> *[E]xperienced substantial growth in recent years.* In the years ended December 31, 2011, 2012 and 2013 and six months ended June 30, 2014, respectively, consumers conducted 6,198,339, 10,905,409, 20,843,529 and 10,840,526 transactions on our MOLPoints platform, involving an aggregate value of MYR175.3 million, MYR371.8 million, MYR589.3 million and MYR338.4 million. For the years ended December 31, 2011, 2012 and 2013 and six months ended June 30, 2014 our revenue was MYR63.2 million, MYR95.6 million, MYR171.5 million and MYR105.1 million, respectively.

43.     The Offering Documents reported MOLG's rapid financial growth over the prior three fiscal years, along with the six months ended June 30, 2014, as follows:

*Six months ended June 30, 2014 compared to six months ended June 30, 2013*

*Revenue.*   Revenue increased 33.4% to MYR105.1 million for the six months ended June 30, 2014 from MYR78.7 million for the same period in 2013 primarily due to increased revenue from all segments except MMOG.asia.

*Segment gross profit.*   As a result of the foregoing, aggregate gross profit for our segments increased 17.1% to MYR52.9 million for the six months ended June 30, 2014 from MYR45.2 million for the same period in 2013, primarily due to increased segment gross profit in all segments. Our gross profit margin across all segments decreased to 50.4% for the six months ended June 30, 2014 from 57.4% for the same period in 2013 primarily due to reduced gross profit margin in our MOLPoints and MOLPay segments.

*Profit from operations.*   As a result of the foregoing, profit from operations increased 22.1% to MYR12.9 million for the six months ended June 30, 2014 from MYR10.6 million for the same period in 2013.

*Year ended December 31, 2013 compared to year ended December 31, 2012*

*Revenue.*   Revenue increased 79.5% to MYR171.5 million for 2013 from MYR95.6 million for 2012 primarily due to increased segment revenue from MOLPoints and MMOG.asia.

*Segment gross profit (derived from the segment information note to our consolidated financial statements).*   As a result of the foregoing, aggregate gross profit for our segments increased 114.4% to MYR101.5 million for 2013 from MYR47.4 million for 2012, primarily due to increases in segment gross profit from MOLPoints and MMOG.asia. Our aggregate gross profit margin increased to 59.2% for 2013 from 49.5% for 2012 primarily due to favorable revenue sharing resulting from a greater proportion of our revenue being derived from MOLPoints and MMOG.asia in 2013 than 2012 and our commencement of operations in Turkey, where our MOLPoints' business generally benefits from more favorable revenue sharing arrangements than those in other countries where we operate MOLPoints. Our revenue sharing arrangements for MOLPoints are generally more favorable compared with our revenue sharing arrangements for MOLReloads.

*Profit from operations.*   As a result of the foregoing, profit from operations increased 96.6% to MYR25.4 million for 2013 from MYR12.9 million for 2012.

*Year ended December 31, 2012 compared to year ended December 31, 2011*

*Revenue.*   Revenue increased 51.2% to MYR95.6 million for 2012 from MYR63.2 million for 2011 primarily due to increased segment revenue from MOLPoints.

*Segment gross profit (derived from the segment information note to our consolidated financial statements).* As a result of the foregoing, aggregate gross profit for our segments increased 51.5% to MYR47.4 million for 2012 from MYR31.3 million for 2011 primarily due to increased segment gross profit for MOLPoints. Our aggregate gross profit margin increased slightly to 49.5% for 2012 from 49.5% for 2011 due to MOLPoints' increased segment gross profit margin.

*Profit from operations.* As a result of the foregoing, profit from operations increased 41.8% to MYR12.9 million for 2012 from MYR9.1 million for 2011.

44.    Finally, the Offering Documents painted a picture of accelerating business trends across all Company segments made possible by a strong business model. For example the Offering Documents stated the following:

> ***Our business model provides strong operating leverage.*** The strength of our content partners and the portable nature of digital content serve to reduce our user acquisition costs as we expand internationally. We believe that potential distribution channels in new markets are attracted to the content offered by our partners, which facilitates our cultivation of a local distribution network when we enter new markets organically. ***In cases where we have expanded to new markets by acquiring an existing distribution network, the content offered by our partners, which includes regional and global content, has facilitated rapid revenue increases that offset the cost of acquisition.*** Our Adjusted EBITDA increased at a CAGR of 80% over 2011-2013. In addition, our business uses capital efficiently. For the period from 2011 through 2013, our average annual capital expenditures were only 8.0% of revenue, resulting in steady cash flow.

45.    Thereafter, on November 11, 2014, MOLG issued a press release announcing its plans to release third quarter 2014 financial results on Friday, November 21, 2014 before the market opened.

46.    Additionally, on November 20, 2014, prior to the market open, Deutsche Bank, which had previously assisted in the Company's IPO, assumed coverage on MOL in a research note setting a "buy" rating and a $12.00 price target on the stock. Deutsche Bank's price objective pointed to a potential upside of 49.44% from the ADSs' previous close.

47.     The statements referenced in ¶¶ 41 – 46 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) MOLG was overstating the revenue and profit derived from MOLG's business and operations; (2) MOLG's actual business model could not sustain the growth trends described in the Offering Documents; (3) MOLG would not be able to report its third quarter 2014 financial results on November 21, 2014, as previously stated; and (4) as a result of the foregoing, MOLG's financial statements were materially false and misleading at all relevant times.

## THE TRUTH EMERGES

48.     On November 20, 2014, after the market closed, little more forty days after the Company had gone public, MOLG announced "that the Company has rescheduled the date it plans to release its third quarter 2014 financial results to Wednesday, December 3, 2014 before market opens."  The Company had previously announced that it would issue the results on November 21, 2014.  Shockingly, the Company also announced that the CFO had abruptly resigned "for personal reasons."

49.     Thereafter, on November 21, 2014, just a day after issuing a "buy" recommendation, Deutsche Bank advised investor caution about shares in MOLG, describing MOL's sudden announcement as "potentially ominous."  Moreover, *Barron's Asia* released an article on November 21, 2014 entitled "Caution!  MOL Global's CFO Resigns 1 Month After IPO," stating, in part:

Malaysia-based Internet gaming services firm MOL Global (MOLG) said it would postpone its planned third-quarter results from today to Wednesday, December 3. This would be MOL Global's first earnings call as a public company and the stock is currently trading well down from its IPO price of $12.50 a share.

MOL Global also said its CFO Allan Wong decided to resign for "personal reasons." Wong only joined MOL Global in August 2014. Jonathan Yoon, currently CFO of one of MOL Global's business segments, will assume the post.

This is unfortunate timing for Deutsche Bank which just started their coverage with a Buy rating and a price target of $12. MOL closed at $8.86 on Thursday.

The bank analysts Alan Hellawell III and Vivian Hao rushed out a follow-up after the announcement, stepping back from their bullish calls:

> MOL, as a relatively small company which spans more than 13 markets, could suffer from poor internal reporting systems, rendering a representation of the business challenging until the actual closing of books at the end of reporting periods. We also note that MOL, with 454 employees, has undertaken no less than 10 investment and acquisitions in five countries since 2009.

50.     On this news, shares of MOLG declined $4.77 per share, or almost 54%, to close at $4.09 per share on November 21, 2014, on unusually heavy volume. This represented a 67% decline in MOLG's ADS price from the IPO price of $12.50.

51.     On November 24, 2014, NASDAQ announced that trading was halted in MOLG at 09:10:08 Eastern Time for "additional information requested" from the Company at a last price of $4.09 per ADS. According to the NASDAQ, trading in the Company's stock will remain halted until the Company has fully satisfied the exchange's request.

52.     As a result of Defendants' false and/or misleading statements, MOLG ADSs traded at inflated prices during the Class Period. However, after disclosure of Defendants' false and/or misleading statements, MOLG's ADSs suffered a precipitous decline in the market value, thereby causing significant losses and damages to Plaintiff and other Class members.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired MOLG ADSs during the Class Period and/or pursuant or traceable to the Company's false and misleading Registration Statement for its IPO, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of MOLG, members of the Officer Defendants' and Director Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

54.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, MOLG units were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

55.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

56.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

57.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the 1933 Act and/or the Exchange Act were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, and prospects of MOLG;

- whether defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading

- whether the defendants caused MOLG to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of MOLG shares during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

58.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

59.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- MOLG shares met the requirements for listing, and were listed and actively traded on the NASDAQ Global Select Market, a highly efficient and automated market;

- As a public issuer, MOLG filed periodic public reports with the SEC and the NASDAQ;

- MOLG regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- MOLG was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

60.     Based on the foregoing, the market for MOLG ADSs promptly digested current information regarding MOLG from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

**COUNT I**

**For Violation of §11 of the 1933 Act**
**(Against All Defendants)**

61.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein, except as set forth below in Paragraph 63.

62.     This Count is brought pursuant to Section 11 of the 1933 Act, 15 U.S.C. §§77k, on behalf of the Class, against all defendants.

63.     This Count does not sound in fraud. All of the preceding allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count. Plaintiff does not allege that the Officer Defendants, the Director Defendants, or the Underwriter Defendants had scienter or fraudulent intent with respect to this Count, insofar as scienter or fraudulent intent are not elements of a §11 claim.

64.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary in order to make the statements not misleading, and omitted to state material facts required to be stated therein.

65.     MOLG is the registrant for the IPO. The other defendants named herein were responsible for the contents and dissemination of the Registration Statement.

66.     As the issuer of the shares, MOLG is strictly liable to Plaintiff and the Class for any misstatements or omissions in the Registration Statement.

67.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true, and/or without omissions of any material facts, were not misleading.

68.     By reason of the conduct alleged herein, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

69.     Plaintiff acquired MOLG shares pursuant and/or traceable to the Registration Statement for the IPO.

70.     Plaintiff and the Class have sustained damages. The value of MOLG stock has declined substantially subsequent to and due to defendants' violations.

71.     At the time of their purchases of MOLG shares, Plaintiff and the other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to November 20, 2014. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based, to the time that Plaintiff filed this complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public, and the time Plaintiff filed this complaint.

## COUNT II

### For Violation of §15 of the 1933 Act
### (Against MOLG, the Officer Defendants and the Director Defendants)

72.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein, except as set forth below in paragraph 74.

73.     This Count is brought pursuant to §15 of the 1933 Act against MOLG, the Officer Defendants, and the Director Defendants.

74.     This Count does not sound in fraud. All of the preceding allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count. Plaintiff does not allege that the Officer Defendants or the Director Defendants had scienter or fraudulent intent with respect to this Count, insofar as scienter or fraudulent intent are not elements of a §15 claim.

75.     The Officer Defendants and Director Defendants each were control persons of MOLG by virtue of their positions as a director and/or senior officer of MOLG.  The Officer Defendants and the Director Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of MOLG.  MOLG controlled the Officer Defendants and the Director Defendants.

76.     Defendants each were culpable participants in the violations of §11 of the 1933 Act alleged in the prior Count above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

## COUNT III

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### (Against MOLG and the Officer Defendants)

77.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

78.    This Count is asserted against MOLG and the Officer Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

79.    During the Class Period, MOLG and the Officer Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

80.    MOLG and the Officer Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of MOLG common stock during the Class Period.

81.    MOLG and the Officer Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of MOLG were materially false and misleading; knew that such statements or documents would be issued or disseminated

to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of MOLG, their control over, and/or receipt and/or modification of MOLG's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning MOLG, participated in the fraudulent scheme alleged herein.

82.     Officer Defendants, who are the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other MOLG personnel to members of the investing public, including Plaintiff and the Class.

83.     As a result of the foregoing, the market price of MOLG ADSs was artificially inflated during the Class Period. In ignorance of the falsity of MOLG's and the Officer Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of MOLG securities during the Class Period in purchasing MOLG ADS at prices that were artificially inflated as a result of MOLG's and the Officer Defendants' false and misleading statements.

84.     Had Plaintiff and the other members of the Class been aware that the market price of MOLG ADS had been artificially and falsely inflated by MOLG's and the Officer Defendants' misleading statements and by the material adverse information which MOLG's and

the Officer Defendants did not disclose, they would not have purchased MOLG ADS at the artificially inflated prices that they did, or at all.

85.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

86.     By reason of the foregoing, MOLG and the Officer Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of MOLG ADS during the Class Period.

### COUNT IV

### Violations of Section 20(a) of the Exchange Act
### (Against the Officer Defendants)

87.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

88.     During the Class Period, the Officer Defendants participated in the operation and management of MOLG, and conducted and participated, directly and indirectly, in the conduct of MOLG's business affairs.  Because of their senior positions, they knew the adverse non-public information about MOLG's misstatement of revenue and profit and false financial statements.

89.     As officers and/or directors of a publicly owned company, the Officer Defendants had a duty to disseminate accurate and truthful information with respect to MOLG's financial condition and results of operations, and to correct promptly any public statements issued by MOLG which had become materially false or misleading.

90.     Because of their positions of control and authority as senior officers, the Officer Defendants were able to, and did, control the contents of the various reports, press releases and public filings which MOLG disseminated in the marketplace during the Class Period concerning

MOLG's results of operations. Throughout the Class Period, the Officer Defendants exercised their power and authority to cause MOLG to engage in the wrongful acts complained of herein. The Officer Defendants therefore, were "controlling persons" of MOLG within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of MOLG ADSs.

91.     By reason of the above conduct, the Officer Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by MOLG.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: November 24, 2013

Respectfully submitted,

**POMERANTZ LLP**

Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
          fmcconville@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I, _Michael Freedman_, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against MOL Global, Inc. ("MOL Global" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire MOL Global securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired MOL Global securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in MOL Global securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed ___11/24/14___
        (Date)

_____
(Signature)

Michael Freedman
(Type or Print Name)

## SUMMARY OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES | PRICE PER SHARE |
|---|---|---|---|
| 10/10/14 | Purchase | 500 | 98.60 |
| 11/21/14 | Sale | 500 | 94.65 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |